UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TAMMY KISTNER

                            Plaintiff,

v.

                            **COMPLAINT AND DEMAND FOR JURY TRIAL**

BMT HOSPITALITY LLC,
(d/b/a Holiday Inn Express)        3:**17-CV-** 644 [GTS/DEP]
TMB, LLC (d/b/a Candlewood Suites)
and THOMAS BEDOSKY,
individually
_____ Defendants.

Tammy Kistner, by her attorney, Stan Matusz, Esq., alleges and avers as follows:

## NATURE OF CLAIM

1. This is a proceeding for declaratory relief and monetary damages to: redress the deprivation of rights secured to the Plaintiff under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA") and under the New York Labor Law ("NYLL").

## JURISDICTION & VENUE

2. The original subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of the Congress providing for the protection of civil rights; under 28 U.S.C § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate

commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and 29 U.S.C. § 216(b).

3. This Court's pendant jurisdiction of claims arising under the New York State Labor Law is also invoked under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is appropriate in the Northern District of New York since the allegations arose in the District, Defendants do business within this District, Defendants employed the Plaintiff in this District, the Plaintiff resides in this Districts, and the Defendants are subject to personal jurisdiction in this District.

## **PARTIES**

5. Defendant, BMT Hospitality, LLC, is a New York Limited Liability Company located at 3601 Vestal Parkway East, Vestal, NY 13850. Defendant, TMB, LLC, is a New York Limited Liability Company located at 3601 Vestal Parkway East, Vestal, NY 13850. Defendant, Thomas Bedosky, is the principal owner of both BMT Hospitality, LLC and TMB, LLC and has an office located at 3601 Vestal Parkway East, Vestal, NY 13850. The parties (hereinafter "Defendants") operate a Holiday Inn Express franchise and Candlewood Suites franchise that are physically adjacent to each other and located on Vestal Parkway East in Vestal, New York, in the

Northern District of New York. The Defendants engage in a business that employed Plaintiff.

6. Defendants are an enterprise engaged in interstate commerce whose annual gross volume of sales is not less than $500,000. At all times relevant to this action, Defendants employed the Plaintiff within 29 U.S.C. § 203(d) and comprised an "enterprise" engaged in interstate commerce or the production of goods for commerce as defined in 29 U.S.C. §§ 203(r) and (s).

7. Defendants constitute a single, integrated enterprise because they share common management, their operations are interrelated, control of labor relations is centralized, and they have common ownership.

8. Plaintiff Tammy Kistner is a resident of the State of New York, residing at 255 Ackley Avenue, Johnson City, NY 13709. Ms. Kistner was employed by Defendants at the Holiday Inn Express and Candlewood Suites from approximately July, 2015 until her termination on March 17, 2017.

9. At all relevant times, Plaintiff was an employee of Defendants under the FLSA and NYLL.

## FACTUAL BACKGROUND

10. Ms. Kistner was hired by Defendants in July 2015. She initially was hired as a housekeeper at a rate of $9.00 per hour.

11. In September 2015, and based upon her exemplary performance, Defendants gave Ms. Kistner a pay raise to $12.00 per hour and a

promotion to the position of "Executive Director for Housekeeping" for the Holiday Inn Express.

12. On September 21, 2016, Defendants gave Ms. Kistner another pay raise to $14.00 per hour based on her outstanding performance. At that time, they expanded Ms. Kistner's role and gave her the additional responsibility of "Executive Director of Housekeeping" for the Candlewood Suites (in addition to, and concurrent with, her responsibilities as Executive Director of the Holiday Inn).

13. Ms. Kistner excelled in this expanded role. On January 1, 2017, Defendants gave Ms. Kistner yet another pay raise to $18.00 per hour based on her stellar performance.

14. In the span of just eighteen (18) months, Defendants gave Ms. Kistner two promotions, three pay increases (which doubled her pay rate) and repeatedly praised her for her work performance.

15. On February 3, 2017, Ms. Kistner received an Employee Warning Notice from her supervisor, Dennis Brown, stating that Ms. Kistner was not to work over forty (40) hours per week. Ms. Kistner was perplexed by the warning. She often was required to work more than forty (40) hours per week in performing her duties. In addition, she had Mr. Brown's permission to work forty (40) hours that specific week.

16. As Director of Housekeeping, Ms. Kistner had access to Defendants' time records and went into the system to examine her work hours. She realized that Defendants were electronically altering/falsifying her time

entries. She also observed that Defendants owner and supervisors were doing the same thing to her co-workers.

17. Ms. Kistner went to confront Defendants' principal owner, Thomas Bedosky, about her discovery. Defendant Bedosky avoided Ms. Kistner. When she finally cornered him and confronted him, Bedosky told her that *"he did not talk to employees."*

18. From that date forward, Ms. Kistner began to monitor Defendants' time records and saw how Defendants were systematically electronically altering employee time entries. They were falsifying the clock-in time when she and other co-workers arrived for their shift, making it appear that they started work later. They were also falsifying the clock-out time of employees to make it appear that employees work ending their work day earlier. Finally, she also saw that Defendants were deducting thirty (30) minutes of time for lunch breaks even though employees had worked through or not taken lunch.

19. Ms. Kistner also spoke with other co-workers about whether their paychecks were matching up with the actual time they worked. She learned that other employees had noticed their pay was not matching their hours worked, and that several had complained to management about this practice.

20. On March 2, 2017, Ms. Kistner filed a federal complaint, styled as: *Kistner, et al. v. BMT, LLC et al., 3:16-CV-270 [FJS/DEP]* (hereinafter "Original Complaint"). The Original Complaint alleges that she and others similarly

situated worked hours for which they were not paid, including hours worked in excess of forty (40) in a week. The Original Complaint describes rampant violations of federal and state wage and hour laws, and how Defendant-owner, Thomas Bedosky, was personally involved in the electronic falsification of employee time records.

21. On Monday, March 13, 2017, the complaint was served on Defendant BMT Hospitality, LLC.

22. Four days later, on Friday, March 17, 2017, Defendants retaliated against Ms. Kistner for the exercise of her rights under the FLSA and NYLL by firing her.

23. Comments made by Defendants' agents between the service of the Original Complaint on March 13, 2017, and Ms. Kistner's termination on March 17, 2017, confirm Defendants' retaliatory intent.

24. On Tuesday morning, March 14, 2017, the day after the Original Complaint was served, Dennis Brown, General Manager of BMT, LLC (a/k/a Holiday Inn Suites), called Plaintiff Kistner into his office. Mr. Brown stated that Defendant-owner, Thomas Bedosky, called him up *"yelling and screaming"* about the Federal Complaint. Defendant Bedosky *"was pissed"* and said to *"make sure Tammy [Kistner] has no access to any of the payroll."*

25. Defendant Bedosky's remark was a reference to the fact that Plaintiff Kistner had access to Defendants payroll records as part of her job duties, and that Ms. Kistner had discovered that Defendants were falsifying time

records. Ms. Kistner was the only hourly employee who had access to Defendants' time records.

26. In the same conversation, Mr. also Brown told Ms. Kistner to give him all the passwords for the Holiday Inn Express and told her she would no longer be doing ordering for the hotel. Instead of doing her regular job, Mr. Brown instructed Ms. Kistner to *"do laundry."* Ms. Kistner had never worked in the laundry department. She had only helped with laundry on an occasional emergency basis.

27. At 11:00am on that same day (Tuesday, March 14, 2017), Defendants sent Ms. Kistner and all other employees home early because of a historic winter storm that was impacting the greater Binghamton region.

28. The next day (Wednesday, March 15, 2017), Ms. Kistner and other employees were told not to report to work because of the crippling winter storm. However, later that same day, and despite the fact that no one was at work, Marcus Peeples (General Manager of the Candlewood Suites) texted Ms. Kistner to tell her that her schedule was changing from 5 days a week to 4 days a week. He further stated that she was to work on Friday, Saturday, Sunday and Monday. Previously, Ms. Kistner had been only scheduled to work on Monday through Friday.

29. When Ms. Kistner called Mr. Peeples to seek clarification on this change, Peeples was rude to Ms. Kistner and stated that Plaintiff Kistner was no longer in charge of scheduling for the housekeeping staff at either the Holiday Inn or Candlewood Suites.

30. Later that same day, Wednesday, March 15, 2017, the Original Complaint was also served on Defendant BMT Hospitality, LLC.

31. On Thursday, March 16, 2017, Plaintiff Kistner reported to work and worked the entire day. Mr. Brown and Mr. Peeples called Ms. Kistner into a meeting at 2:00pm and Peeples stated again that her new schedule would be *"Friday, Saturday, Sunday and Monday."*

32. On Friday, March 17, 2017, Mr. Brown and Mr. Peeples summoned Ms. Kistner to a meeting. They announced that she was *"terminated effective immediately."* Both Peeples and Brown refused to give her an explanation for why she was being fired. They said: *"at this time, I cannot give you an explanation."*

33. Twenty minutes later, Mr. Peeples, General Manager of the Candlewood Suites, called a meeting of Candlewood housekeeping employees to announce that Ms. Kistner was fired *"effective immediately."* During this meeting, Peeples made a number of statements where he used Ms. Kistner's termination to intimidate and threaten Defendants' employees. He said: *"She [Ms. Kistner] has been let go effective 20 minutes ago. You understanding me?"* He then said, *"I keep preaching this: "stay in your own lane. If you have problems, don't make it someone else's problem."* Peeples then referenced a conversation with another employee who said Defendants were *"not properly tracking time"* and reiterated: *"If you've got a problem, don't make it someone else's problem."* Peeples then stated: *"She [Kistner] has been tainting the Kool-aid here."*

34. *Defendants used Ms. Kistner's termination and Mr. Peeples' threats to discourage Defendants' other employees from participating in the wage and hour action that she had filed.*

35. Plaintiff Kistner has suffered, and continues to sustain, economic harm resulting from her loss of employment. Despite a diligent job search effort, she remains unemployed as of the date of this Complaint.

36. In addition, Ms. Kistner has suffered severe emotional harm, embarrassment, loss of self-esteem, stress and anxiety as a result of her retaliatory termination. She has sought treatment from her medical provider for emotional injuries sustained by the Defendants' unlawful act.

## AS AND FOR A FIRST CLAIM:  FLSA RETALIATION

37. Plaintiff realleges the above paragraphs as if fully restated herein.

38. Under the FLSA, it is *"unlawful for any person…to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA], or has testified or is about to testify in any such proceeding…"* 29 U.S.C. § 215(a)(3).

39. Plaintiff Kistner engaged in protected activity under the FLSA by filing a class action Federal Complaint as the lead plaintiff. Defendants retaliated against her for exercising those rights by firing her.

40. As a direct and proximate result of the unlawful retaliatory conduct in violation of the FLSA, Ms. Kistner has suffered economic harm for which she is entitled to back pay, reinstatement and/or front pay, and other relief.

41. As a direct and proximate result of the unlawful discriminatory conduct in violation of the FLSA, Ms. Kistner has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

42. The foregoing conduct of Defendants constitutes willful violations of the FLSA for which Plaintiff is entitled to an additional amount as liquidated damages.

43. The foregoing conduct of Defendants constitutes willful violations of the FLSA for which Plaintiff is entitled to an additional amount as punitive damages.

44. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the FLSA.

**AS AND FOR A SECOND CLAIM: RETALIATION UNDER THE NYLL**

45. Plaintiff realleges the above paragraphs as if fully restated herein.
46. The New York Labor *"prohibits an employer from discharging, penalizing or in any other manner retaliating against an employee because such employee has made a complaint to his or her employer … that the*

*employer has violated any provision of … the Labor Law."* NYLL Article 19 § 215.

47. Plaintiff Kistner engaged in protected activity under the NYLL by filing a Federal Complaint as the Lead Plaintiff, and Defendants discharged her because of that protected activity. As a direct and proximate result of the unlawful retaliatory conduct in violation of the NYLL, Ms. Kistner has suffered economic harm for which she is entitled to back pay, reinstatement and/or front pay, and other relief.

48. As a direct and proximate result of the unlawful discriminatory conduct in violation of the NYLL, Ms. Kistner has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

49. The foregoing conduct of Defendants constitutes willful violations of the NYLL for which Plaintiff is entitled to an additional amount as liquidated damages.

50. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the NYLL.

## INDIVIDUAL LIABILITY UNDER THE FLSA

51. Defendant-owner Bedosky has operational control of Defendants BMT Hospitality, LLC and TMB, LLC, and control over the terms and conditions of Plaintiff's employment.

52. Defendant-owner Bedosky is jointly and severally liable under the FLSA.

## INDIVIDUAL LIABILITY UNDER THE NYLL

53. Defendant-owner Bedosky has operational control of Defendants BMT Hospitality, LLC and TMB, LLC and control over the terms and conditions of Plaintiff's employment.

54. Defendant-owner Bedosky is jointly and severally liable under the NYLL § 215.

## TRIAL BY JURY

55. Plaintiff demands a trial by jury on all claims properly triable by a jury.

    **WHEREFORE**, the Plaintiff respectfully requests that upon trial this Court enter judgment against Defendants in her favor and be given the following relief:

    A. An award of the value of Plaintiff's lost wages;

    B. Reinstatement or front pay;

    C. Compensatory damages;

    D. Liquidated damages;

    E. Punitive damages

    F. An award of reasonable attorneys' fees, expenses, expert fees, disbursements and costs incurred in vindicating the rights of Plaintiff;

G. An award of pre and post judgment interest;

H. Granting such additional relief as this Court deems just and proper.

Dated: Ithaca, New York
June 15, 2017

/s/Stan Matusz
Stan Matusz, Esq.
Bar Roll # 520502
*Attorney for Class*
29 Murfield Drive
Ithaca, NY 14850
Telephone: 607-319-5513
stanmatusz@gmail.com